UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.

**ENRIQUE ALVEAR**,

      Plaintiff,

vs.

**PREMIUM BRANDS OPCO
FLORIDA LLC, d/b/a ANN TAYLOR,
a foreign limited liability company,**

      Defendant.

_____/

## <u>COMPLAINT</u>

Plaintiff ENRIQUE ALVEAR, through undersigned counsel, sues Defendant PREMIUM BRANDS OPCO FLORIDA LLC, d/b/a ANN TAYLOR, a foreign limited liability company, and alleges as follows:

1.    This is an action for declaratory and injunctive relief, attorney's fees, costs, and litigation expenses for unlawful disability discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.

2.    This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331 and the provisions of the ADA. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

1

3.    Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Middle District of Florida.

4.    Plaintiff ENRIQUE ALVEAR is a resident of Volusia County, Florida, is sui juris, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA"). Although Plaintiff resides in Volusia County, he often travels with his wife to the Orlando, Altamonte Springs, and surrounding areas and intends to visit these areas again in late March or April 2026.

5.    Plaintiff is and at all relevant times has been a blind and visually disabled person who has been diagnosed as having retinal detachment to both eyes. Because of his condition, Plaintiff is blind and is substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing his world, and adequately traversing obstacles. As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq.*, and 42 U.S.C. §3602(h). Plaintiff further is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

2

6.      Because he is blind, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 286 F.Supp.3d 365, 374 (E.D.N.Y. Dec. 21, 2017).

7.      Defendant is a foreign limited liability company authorized to do business and doing business in the State of Florida. Defendant owns, operates, and/or controls a chain of retail stores nationwide selling women's apparel, shoes, and

3

accessories, one or more of which Plaintiff intended to patronize in the near future (and as early as late March or April 2026), including the store located in the Orlando International Premium Outlets at 4963 International Drive, Orlando, Florida.

8.    Plaintiff's blindness limits him in the performance of major life activities, including seeing, and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

9.    Plaintiff frequently accesses the internet. Because he is blind, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

10.    At all times material hereto, Defendant was and still is an organization that owns, operates, and/or controls a chain of retail stores nationwide under the name "Ann Taylor". Each "Ann Taylor" store is open to the public. As the owner, operator, and/or controller of these stores, Defendant is defined as a place of "public accommodation" within meaning of the ADA because Defendant is a private entity which owns, operates, and/or controls, "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment", per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(5).

4

11.    Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(E), and its implementing regulations, 28 C.F.R. Part 36.

12.    Defendant also owns, controls, maintains, and/or operates an adjunct website, https://www.anntaylor.com (the "Website"). One of the functions of the Website is to provide the public information on the locations of Defendant's physical stores. Defendant also sells to the public its merchandise through the Website, which acts as a critical point of sale for Defendant's merchandise that is also available for purchase in, from, and through Defendant's physical stores. In addition, the Website allows users to arrange in-store pickup of Defendant's merchandise, check in-store availability of Defendant's merchandise, purchase physical and electronic gift cards for use online and in the physical stores, and sign up for an emailer/rewards account to receive exclusive offers, benefits, invitations, loyalty rewards, and discounts for use online and in the physical stores.

13.    The Website also services Defendant's physical stores by providing information on available merchandise, services, tips and advice, editorials, sales campaigns, events, and other information that Defendant is interested in communicating to its customers.

5

14. Because the Website allows the public the ability to secure information about the locations of Defendant's physical stores, purchase merchandise also available for purchase in, from, and through the physical stores, arrange in-store pickup of Defendant's merchandise, check in-store availability of Defendant's merchandise, purchase physical and electronic gift cards for use online and in the physical stores, and sign up for an emailer/rewards account to receive exclusive offers, benefits, invitations, loyalty rewards, and discounts for use online and in the physical stores, the Website has a nexus to, and is an extension of and gateway to, the goods, services, privileges, and advantages of Defendant's physical stores, which are places of public accommodation under the ADA. As an extension of and service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Website is an extension of the services, privileges, and advantages made available to the general public by Defendant at and through its brick-and-mortar locations and businesses.

15. Because the public can purchase Defendant's merchandise through the Website that is also offered for sale in, from, and through Defendant's physical stores, thus having the Website act as a critical point of sale for Defendant's merchandise also sold in, from, and through the physical stores, arrange in-store pickup of Defendant's merchandise, check in-store availability of Defendant's merchandise, purchase physical and electronic gift cards for use online and in the

physical stores, and sign up for an emailer/rewards account to receive exclusive offers, benefits, invitations, loyalty rewards, and discounts for use online and in the physical stores, the Website is an extension of, and gateway to the physical stores, which are places of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E). As such, the Website is a necessary service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to, and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical stores.

16.    At all times material hereto, Defendant was and still is an organization owning, operating, and/or controlling the Website. Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to, and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores. As such, Defendant has subjected itself and the Website to the requirements of the ADA.

7

17.    Because he is blind, Plaintiff does not drive. As a result, he and his wife, who also does not drive, rely on others such as family, friends, public buses, and ride share services to travel in and throughout the Volusia County area where they reside to do their shopping and to visit and dine in restaurants. Additionally, Plaintiff and his spouse often similarly travel to and throughout neighboring counties, including Flagler, Seminole, Orange, Polk, and Osceola Counties, oftentimes to attend medical and other necessary appointments and avail themselves of and enjoy the numerous services, shopping and dining experiences these counties have to offer. Plaintiff also relies on the availability of retail store and restaurant websites to enable him to obtain information about the physical locations to help plan his visits and to view merchandise or food and beverage offerings. In addition, the Website here allows Plaintiff the convenience to shop, order and purchase Defendant's merchandise online, which is also offered for sale in, from, and through the physical stores, for either delivery to his home or pickup from the physical stores.

18.    Plaintiff, who has been and intends to continue to be a customer of Defendant, visited Defendant's Website on January 16, 2026, with the intent to pre-shop Defendant's merchandise offerings and to make a purchase of Defendant's available merchandise also available for purchase in, from, and through Defendant's physical stores. Plaintiff plans to return to and use Defendant's Website as early as late March and April 2026, and in the months thereafter, for the purposes of

8

reviewing Defendant's available merchandise and pricing and purchasing Defendant's merchandise that is also available for purchase in, from, and through the physical stores. Plaintiff also plans to visit Defendant's physical Orlando store location (i.e., Orlando International Premium Outlets), as early as late March and April 2026, at which time he will be driven to the location to visit the area and patronize and shop in Defendant's physical store. Indeed, Plaintiff regularly travels in the vicinity of Defendant's Orlando store as he has visited and shopped, and in the past has frequently visited and shopped (ten or more times), other stores and restaurants located in and around the Orlando International Premium Outlets, including those in the nearby Mall at Millenia. Plaintiff thus would immediately return to both the Website and Defendant's Orlando physical store location (i.e., Orlando International Premium Outlets) but for the accessibility barriers described hereinbelow. Plaintiff's intent to return to both the Website and the physical store, and to patronize the store through access and use of the Website, thus is concrete, specific, and ongoing, and Defendant's failure to maintain an accessible Website creates a real and immediate threat of future discrimination to Plaintiff and other blind and visually disabled persons, such as he, who use screen reader software to access websites and communicate with physical retail store locations.

19.    Plaintiff also intends to continue to monitor the Website as early as late March and April 2026, as well as in the following months, in his capacity as a tester

9

to ascertain whether it has been remedied and updated to interact properly with screen reader software.

20. The opportunity to shop and pre-shop Defendant's merchandise, purchase physical and electronic gift cards for use online and in the physical stores, and sign up for an emailer/rewards account to receive exclusive offers, benefits, invitations, loyalty rewards, and discounts for use online and in the physical stores from his home are important and necessary accommodations for Plaintiff because traveling outside of his home as a blind individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

21. Like many consumers, Plaintiff accesses a number of websites at a time to help plan his store visits and to compare merchandise, prices, services, sales, discounts, and promotions. Plaintiff may look at several dozen websites to compare features, discounts, services, promotions, and prices.

22. Beginning on January 16, 2026, Plaintiff, intending to make a purchase of Defendant's merchandise also available for purchase in, from, and through its physical Orlando store location (i.e., Orlando International Premium Outlets), attempted on a number of occasions to utilize the Website. Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it

was accessible to blind and visually disabled persons, such as he, who use screen reader software to access and navigate company websites.

23. Plaintiff utilizes available screen reader software that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These access barriers, which are severe and pervasive, specifically prevented Plaintiff from fully and effectively accessing and navigating the Website and, as confirmed by Plaintiff's expert (with reference to the Web Content Accessibility Guidelines ("WCAG") 2.1 Level A and AA), include the following:

a) Level A Guideline 1.3.1 – Info and Relationships (Information, structure, and relationships conveyed through presentation can be programmatically determined or are also available in text) – When a size option for an item is sold out, the lack of any verbal notification that would otherwise indicate to the screen reader user that a size option for an item is unavailable. Sold-out size buttons appear gray with a strikethrough, but they are announced the same way as in-stock options when given focus with the tab key. When a sold-out size button is selected with the enter key, no announcement is made to indicate to the screen reader user that the option is unavailable or that the selection failed, and thus no "Sold Out" button appears on the page below. When focus moves away from and then returns to the button, it

11

continues to be announced as "not selected." As a result, the screen reader user is not informed of when a size is sold out or why the selection cannot be made. (*Note: The accessibility mode was activated during the audit. Once activated, an "Accessibility Enabled" message remained visible below the footer.)

b)      Level A Guideline 1.3.1 - Info and Relationships (2) (Information, structure, and relationships conveyed through presentation can be programmatically determined or are also available in text) – Size chart content that cannot be accurately read with the screen reader software. When navigating through the size chart with the arrow keys, column and row headers are not clearly identified. Upon first entering the chart, multiple column headers are announced together as a single line of text. Then, as focus moves through each row, labels and numeric values are announced in an unclear and inconsistent manner. In some cases, values are announced under incorrect headings, such as both the "Regular" and "Curvy" waist measurements being announced as "Regular", and both the "Regular" and "Curvy" hip measurements being announced as "Curvy." As a result, the screen reader user cannot accurately interpret the size chart information.

c)      Level A Guideline 2.1.1 – Keyboard (website must be accessible by keyboard only (no mouse or other pointing device)) – Size chart content that is not accessible as expected. When the "Size Chart" button is selected on a product page, the "Size Guide" dialog gets displayed and given focus. After the "Close" button is

12

announced, pressing the tab key moves focus to the tab grouping below, and the screen reader software announces, "Tab control size chart tab selected 1 of 3." At this point, pressing any of the arrow keys does not move focus to the remaining tabs as expected. Instead, the screen reader user must press the tab key to move focus to each remaining tab, each of which can be selected with the enter key. However, once a tab is selected and its associated size chart content gets visually displayed below, that content cannot be accessed using the down-arrow key. Alternatively, pressing the tab key moves focus directly to the "FAQs" link at the bottom of the dialog, thus bypassing all size chart content in the process. As a result, the only way to access the size chart content is to immediately begin navigating with the down-arrow key from the "Close" button and never to tab to the interactive tabs as intended.

d)      Level A Guideline 2.4.3 - Focus Order (website provides focus in a logical order that preserves meaning and operability) – Upon first entering the Website, the lack of any announcement to indicate to the screen reader user that accessibility options are available. An accessibility mode does exist; however, it can only be activated through a link announced as "Enable Accessibility link", which is encountered in the footer of the Website after approximately 74 tab key presses. Due to the excessive navigation required to locate this link, it is unlikely that the screen reader user will discover or activate the accessibility mode on the Website.

e)      Level A Guideline 2.4.3 - Focus Order (2) (website provides focus in a logical order that preserves meaning and operability) – Discount, payment, and order modification options that are located after checkout buttons. On the cart page, additional discount and payment options are not announced or given focus until after the "Checkout" button. These include the "PayPal" checkout button, a "View My Offers" button, a "Sign In" link to view rewards, and the "Promo Code or Gift Card" input field. On the checkout page, the "Order Summary" section, where users can remove items and enter a promo code, is not announced or given focus until after the "Place Order" button and an additional footer link. Because the "Checkout" and "Place Order" buttons usually signal completion of the checkout process, the screen reader user is unlikely to continue navigating past them to locate these additional fields.

f)      Level A Guideline 4.1.2 - Name, Role, Value (All interactive elements are labeled with a descriptive name, role, and current value) – In the navigation region, a "Coupons and Special Offers" link that is unlabeled; it is announced only as "6 link", which does not convey its purpose or destination to the screen reader user.

g)      Level A Guideline 4.1.2 - Name, Role, Value (2) (All interactive elements are labeled with a descriptive name, role, and current value) – On the "Store Locator" page, unlabeled filter checkboxes. These checkboxes are announced only

14

as "checkbox", along with their checked or unchecked state, and without any further indication of what option each represents. The visible labels are not announced when the checkboxes receive focus, so the screen reader user cannot know their purpose.

h)    Level A Guideline 4.1.2 - Name, Role, Value (3) (All interactive elements are labeled with a descriptive name, role, and current value) – On the "Store Locator" page, the presence of unlabeled elements. After performing a location search, a list of store results gets displayed with each store's name and address. However, when navigating this list with the tab key, focus moves only to the "Get Directions" and "View Store Details" links for each location. The associated store name and address are not announced with these links, thus resulting in repeated announcements of "Get Directions link" and "View Store Details link" with no indication provided as to which store each link applies to. Then, after tabbing through the results list, focus moves to the map, where individual location markers receive focus. Each of these markers is announced only as "(#) clickable button", with no identifying information to indicate which store or location they represent being provided. As a result, the screen reader user cannot determine which store they are interacting with when navigating either the results list or the map and must therefore activate controls without knowing what location will be selected.

24.    Plaintiff attempted to locate an "accessibility" notice, statement, or policy on the Website that would direct him to a webpage with contact information

15

for disabled individuals who have questions or concerns about, or who are having difficulties accessing, navigating, communicating with, the Website. Although the Website appeared to have an "accessibility" statement linked from, and buried at the bottom of, its home page, as well as a third-party "accessibility" plugin installed (provided by "UsableNet"), which can be activated by navigating all the way down to the bottom of the home page where it is located and enabling it, that "accessibility" statement and "accessibility" plugin, when activated and tested, still could not be effectively accessed by, continued to be a barrier to, and did not provide a viable alternative means to fully and equally access and navigate the Website for blind and visually disabled persons, including Plaintiff. Plaintiff, thus, was unable to receive any meaningful or prompt assistance through the "accessibility" statement and "accessibility" plugin to enable him to equally, quickly, fully, and effectively navigate the Website.

25.     The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, frustrated, and humiliated, and gave him a sense of isolation and segregation, as he is unable to participate in the same shopping experience, with the same access to the merchandise, sales, services, discounts, and promotions, as provided at the Website and in the physical stores as the non-visually disabled public.

16

26. Plaintiff desires and intends, specifically as early as late March and April 2026, to patronize Defendant's physical Orlando store location (i.e., Orlando International Premium Outlets) and to use the Website to access Defendant's goods and services available in and through the physical store, but he is presently unable to do so as he is unable to effectively communicate with Defendant due to his blindness and the Website's access barriers. In addition, as a tester using screen reader software, Plaintiff is unable to fully and equally access, navigate, and communicate with Defendant through the Website due to his blindness and the Website's access barriers. Thus, Plaintiff and others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

27. Because of the nexus between Defendant's physical stores and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's physical stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to, and enjoyment of the goods, services, privileges, and advantages as afforded the

17

non-visually disabled public both online and in the physical stores, which are places of public accommodation subject to the requirements of the ADA.

28. On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

29. On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of the Website by individuals with disabilities.

30. On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

31. On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

32. On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

33. On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

34. On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

35. Defendant has not created and instituted a useful and effective Specialized Customer Assistance line, service, or email contact mode for customer assistance for the visually disabled.

36. Defendant has not created and instituted on the Website a useful and effective page for individuals with disabilities, nor displayed a proper link and information hotline, nor created a proper information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled and/or blind communities.

37. The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.1 or higher versions of web accessibility.

38. Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's merchandise offered on the Website and in the physical stores from their homes.

39. Defendant thus has not provided full and equal access to, and enjoyment of, the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and the physical stores in contravention of the ADA.

40. Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities, such as Plaintiff.

41. The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet e-commerce websites, such as the Website at issue in the instant action.

42. Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website that prevent individuals with visual disabilities from the means to comprehend information presented therein.

43. Defendant is, and at all relevant times has been, aware of the need to provide full and equal access to all visitors to the Website.

44. The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

45. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with the Website's access and operation.

20

46.    Notice to Defendant is not required because of Defendant's failure to cure the violations.

47.    Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

48.    Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

49.    Plaintiff re-alleges paragraphs 1 through 48 as if set forth fully herein.

50.    Pursuant to 42 U.S.C. §12181(7)(E), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

51.    Pursuant to 42 U.S.C. §12181(7)(E), the Website is covered under the ADA because it provides the general public with the ability to locate and learn about Defendant's physical stores, purchase merchandise also available for purchase in, from, and through the physical stores, arrange in-store pickup of Defendant's merchandise, check in-store availability of Defendant's merchandise, purchase physical and electronic gift cards for use online and in the physical stores, and sign up for an emailer/rewards account to receive exclusive offers, benefits, invitations, loyalty rewards, and discounts for use online and in the physical stores. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical stores. Further, the Website serves to augment Defendant's

physical stores by providing the public information about the stores and by educating the public as to Defendant's available merchandise sold through the Website and in, from, and through the physical stores.

52.    Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

53.    Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

54.    In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that

22

taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

55.    Defendant's Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

56.    Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to, and enjoyment of the goods, information, and services that Defendant has made available to the public on the Website and in the physical stores in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

57.    The Website was subsequently visited by Plaintiffs expert in February 2026 and the expert determined that many of the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Despite being a defendant in several prior ADA website accessibility lawsuits, one or more of which resulted in a confidential settlement agreement that obligated Defendant to fully remediate the Website, Defendant has made insufficient material changes or improvements to the Website to enable its full and equal use, and enjoyment by, and accessibility to, blind and visually disabled persons, such as Plaintiff. Also, although the Website appeared to have an "accessibility" statement linked from, and buried at the bottom of, its home page, as well as a third-party

"accessibility" plugin installed (provided by "UsableNet"), which can be activated by navigating all the way down to the bottom of the home page where it is located and enabling it, that "accessibility" statement and "accessibility" plugin, when activated and tested, still could not be effectively used or accessed by, and continued to be a barrier to, blind and visually disabled persons, such as Plaintiff. Defendant furthermore has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals. Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302.

58.    More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

59.    Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

60.    There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-

24

text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

61.    Defendant has violated the ADA -- and continues to violate the ADA -- by denying access to the Website by individuals, such as Plaintiff, with visual disabilities who require the assistance of screen reader software to comprehend and access internet websites. These violations within the Website are ongoing.

62.    The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

63.    According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

64.    According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in

25

such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

65.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

66.     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication and thus violates the ADA.

67.     As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to its brick-and-mortar locations, Plaintiff has suffered an injury in fact by being denied full and equal access to, enjoyment of, and communication with Defendant's Website and its physical stores.

68.     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

69.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

26

a) Require Defendant to adopt and implement a web accessibility policy to make publicly available, and directly link from the homepage of the Website, a functional statement of the Defendant's policy to ensure persons with disabilities have full and equal access to, and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the physical stores through the Website.

b) Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's physical stores and becoming informed of and purchasing Defendant's merchandise, and during that time period prior to the Website being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and the physical stores.

70.    Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A. A declaration that Defendant's Website is in violation of the ADA;

B. An Order requiring Defendant, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C. An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

---

[1]  or similar.

D. An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to ensure compliance thereto;

E. An Order directing Defendant, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its Website;

F. An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

G. An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's Website to be fully accessible to the visually disabled;

H. An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

29

I. An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J. An Order directing Defendant, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K. An award to Plaintiff of his reasonable attorney's fees, costs and expenses; and

L. Such other and further relief as the Court deems just and equitable.

DATED:  March 11, 2026.

**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
4800 N. Hiatus Road
Sunrise, FL 33351
T. 954/362-3800
954/362-3779 (Facsimile)
Email:  rhannah@rhannahlaw.com


By:    s/ Roderick V. Hannah
RODERICK V. HANNAH
Fla. Bar No. 435384

**LAW OFFICE OF PELAYO DURAN, P.A.**
 Co-Counsel for Plaintiff
6355 N.W. 36th Street Suite 307
Virginia Gardens, FL 33166
T. 305/266-9780
 305/269-8311 (Facsimile)
Email: Duranandassociates@gmail.com


By:    s/ Pelayo M. Duran
PELAYO M. DURAN
Fla. Bar No. 0146595